21SMCV00237

Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Mark Young

Electronically FILED by Superior Court of California, County of Los Angeles on 02/02/2021 03:47 PM Sherri R. Carter, Executive Officer/Clerk of Court, by L. Kulkin,Deputy Clerk

1  GERARD P. FOX (SBN 151649)
   gfox@gerardfoxlaw.com
2  GERARD FOX LAW P.C.
   1880 Century Park East, Suite 1410
3  Los Angeles, CA 90067
   Telephone:     (310) 441-0500
4  Facsimile:     (310) 441-4447

5
   *Attorneys for Gerard Fox Law P.C.*
6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF LOS ANGELES**

10

11  GERARD FOX LAW P.C., a California        Case No.  21SMCV00237
    Corporation,
12
                         Plaintiff,
13                                           **COMPLAINT FOR DECLARATORY**
            v.                               **RELIEF**
14
    MELISSA FRANCIS, an individual,
15
                         Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

---

COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Gerard Fox Law (the "GFL" or "Plaintiff") brings this action against Defendant Melissa Francis ("Francis" or "Defendant") as follows:

## INTRODUCTION

1.      GFL employed Francis as a Non-Equity Partner from July 2017 to January 2020.  At all times, Francis' employment was at-will, meaning any party could end the employment for any reason. During the time of her employ, Francis made considerably more money than any other Non-Equity Partner at the firm.  Francis' compensation was structured as a base salary with the potential for a bonus based on the origination of her own business.  Francis was never guaranteed a bonus, but the GFL stated it would use its best efforts to assist her in achieving her bonuses.

2.      During her employment GFL worked to assist Francis with her originating her own busines and encouraged her to work on her own clients instead of firm cases.  As detailed below, in October 2019, Francis demanded that the firm increase her base salary to a number that the firm simply could not afford. In that correspondence, she stated that if the firm did not meet her salary demand she would leave.  GFL quickly confirmed to Francis that it could not meet her salary demand.  In January 2020, given the uncertainty of when Francis would leave due to GFL not raising her base salary, GFL terminated Francis.

3.      In January 2021, during a global pandemic, Francis reached out to GFL demanding to be paid bonuses that she claimed were owed to her.  As such, through this Complaint, GFL seeks a declaration that it does not owe Francis any more compensation.

## THE PARTIES

4.      Plaintiff Gerard Fox Law P.C. is a law firm organized as a professional corporation headquartered in Los Angeles, California, with a second office in New York, New York.

5.      On information and belief, Defendant Melissa Francis is an individual who resides in New York, but at all times relevant to the allegations set forth herein, purposefully availed herself of the laws of the State of California, including by working on several cases in Los Angeles and traveling to Los Angeles.

## JURISDICTION AND VENUE

6.      This Court has personal Jurisdiction over the Defendant because she deliberately solicited and entered into employment with GFL, headquartered in this state.  Additionally, a substantial part of the

1   events or omissions giving rise to the claims herein occurred and continues to occur in this State.

2       7.      This Court has jurisdiction to grant declaratory relief on behalf of Plaintiff pursuant to Code

3   of Civil Procedure § 1060.

4       8.      Venue is proper under Code of Civil Procedure section 395(a), because, among other

5   things, Defendant was employed by Plaintiff, headquartered in California, and performed duties related

6   to that employment in Los Angeles, California.

7                           **FACTS RELEVANT TO ALL CLAIM**

8       9.      GFL is a bi-coastal midsized firm headquartered in Los Angeles, California with its

9   secondary office in Midtown Manhattan.  GFL was started by managing partner Gerry Fox ("Fox") to

10  create a new type of law firm.  GFL focuses on providing top notch legal services with hourly rates far

11  lower than Big Law firms.  In 2016, GFL had recently opened its New York office and was looking to

12  grow its presence in the New York market.

13      10.     In spring 2016, GFL met with senior attorney candidate Melissa Francis.  At the time,

14  Francis was employed at a Big Law firm in New York City.  Francis was about to go on maternity leave,

15  and wanted to find a new firm to work at after returning from leave.  This meant that while GFL and

16  Francis were discussing her potential employment in the summer of 2016, Francis was not supposed to

17  start at GFL until summer 2017.

18      11.     During the interview process, Francis stated her desire to continue earing a similar salary

19  to what she had earned at her Big Law firm at GFL.  Francis made it clear that it was her goal to make

20  $435,000 per year.  Of course, as a midsized firm with billing rates significantly lower than Big Law, GFL

21  could not match that salary.  However, GFL's origination policy allows those who bring in business the

22  ability to take home a much higher percentage of business they originate than Big Law.  Thus, GFL and

23  Francis discussed that her base pay could be greatly enhanced with business Francis generated herself.

24  This origination bonus would help Francis reach her salary goals.  However, GFL never guaranteed that

25  Francis would receive any bonus on top of her base salary.

26      12.     On August 22, 2016, GFL issued ML an offer letter detailing the terms of her potential

27  employment ("Offer Letter").  A true and correct copy of that Offer Letter is attached hereto as **Exhibit**

28  **1**.  The Offer Letter offered Francis a base salary of $350,000 and stated that with Francis'potential

origination bonus, she could reach her target goal of $435,000. The Offer Letter stated that Francis could qualify for an annual bonus that would be "in line with industry custom and practice for growing bi-coastal firms." (Ex. 1.) However, at no point did the Offer Letter guarantee that Francis would receive an annual bonus or guarantee the amount of such a bonus.

13. The Offer Letter set forth that Francis' base salary of $350,000 was far above the base salary of any other new Non-Equity Partner at GFL. Indeed, the Offer Letter noted that new Non-Equity Partners "top out at a base of about $240,000 and can move up to $275,000." (Ex. 1.) The Offer Letter notes that Non-Equity Partners typically cannot make more than $275,000 without bringing in their own business to receive an origination bonus. (Id.) The Offer Letter goes on to state that Non-Equity Partners with a million-dollar book of business can earn about $340,000-$380,000 annually.

14. In all, the Offer Letter was clear that the only way for Francis to earn near her goal $435,000 in compensation was to generate significant business of her own.

15. Francis started working for GFL around July 10, 2017. At the beginning of her employment, Francis signed an Employee Acknowledgment Form in which Francis acknowledged that her employment was "at-will" and could be terminated by her or GFL "at will, with or without cause, at any time." Attached hereto as **Exhibit 2** is a true and correct copy of the Employee Acknowledgment Form.

16. GFL was able to pay Francis her base salary of $350,000 annually from July 2017 through December 2018. However, starting January 2019, GFL was simply unable to carry Francis' base salary, which again was well above what any other Non-Equity Partner was currently making at GFL or had ever made. Attached hereto as **Exhibit 3** is a table showing salaries of current and former Non-Equity Partners at GFL. As shown in Exhibit 3, other Non-Equity Partners at GFL had base salaries ranging between $192,000 and $260,000.

17. On or around December 30, 2018, GFL informed Francis that it would have to reducer her base salary to $240,000, which was on the high end of what other Non-Equity Partners were being paid. A true and correct copy of the e-mail correspondence between Gerry Fox and Melissa Francis is attached hereto as **Exhibit 4**.

////

1   18.   On or around January 7, 2019, Francis responded and argued that GFL "owed [her] a bonus

2 of approximately $40,750 for 2017 (which is the prorated amount) and an $85,000 bonus for 2018." (Ex.

3 4 at p. 2.)   From this e-mail it became apparently that Francis believed she was entitled to receive the

4 difference between $435,000 and $350,000 as an annual bonus.  However, as is clear from the Offer Letter,

5 GFL never guaranteed that Francis would receive an annual bonus of $85,000.

6   19.   GFL does not have a lock-step salary and bonus program like Big Law firms do.  At GFL,

7 attorneys may receive a discretionary bonus, in January, based on the efficiency and impact of the attorney.

8 These bonuses are discretionary and are not based solely on year of practice and hours worked like in Big

9 Law.  Moreover, GFL often raises attorney salaries instead of paying out an annual bonus.  Thus, no

10 attorney at GFL is guaranteed an annual bonus, let alone a bonus at a certain amount.

11   20.   Moreover, the Offer Letter made clear that the only way for Francis to meet her salary

12 goals was to originate substantial business of her own.  (*See* Ex. 1.)  On or around January 8, 2020, Fox

13 told Francis that GFL disputed her claim that she was entitled to a mandatory bonus.  (Ex. 4 at p. 1.)

14   21.   In 2019, Francis brought in a moderately sized institutional client that meaning that she

15 was able to generate more substantial origination bonuses.  Based on Francis' new busines, and other Non-

16 Equity Partners generating their own business, GFL revamped its origination bonus formula to make it as

17 fair as possible to all parties.  Under the formula, the originating Non-Equity Partner received 20% of the

18 amount collected from their own business minus an hours reimbursement and reasonable expenses.

19   22.   However, Francis asked that she receive 25% instead of the standard 20% on this new

20 client.  Understanding Francis' ultimate goal to earn $435,000, GFL agreed to pay Francis 25%.  Thus,

21 Francis was now making more than most Non-Equity partners at GFL and was receiving more money for

22 the work that she originated.  In 2019, Francis received origination bonuses totaling $34,729.21, and in

23 2020, Francis received origination bonuses totaling $3,875.33.

24   23.   However, this meant that Francis was not working on GFL's larger institutional clients.

25 Thus, Francis was now working mostly on her own cases and not on the biggest cases for the biggest

26 clients in the firm.

27   24.   In April 2019, GFL was able to raise Francis' base pay to $260,000.  Francis was still at

28 the top of the pay scale for Non-Equity Partners at GFL.

COMPLAINT FOR DECLARATORY RELIEF

25.     On or around October 19, 2019, Francis e-mailed Fox asking if the GFL could increase her base salary to $335,000.  A true and correct copy of that e-mail is attached hereto as **Exhibit 5**.  Francis detailed a number of financial considerations which she stated meant that she could no longer work at a base salary of $260,000.  (*Id.*)  Francis stated that she needed to "know by November 1 if the firm will be able to increase [her] salary to $335k by November 15, as [she would] need to start looking elsewhere if that's not feasible."  (*Id.*)

26.     GFL quickly informed Francis that it was not in a position to increase her base salary to $335,000.  After November 1, 2019, Francis did not tell GFL if she was looking for new employment or if/when she was planning on leaving and continued working at GFL.

27.     GFL was left in the untenable position of not knowing whether or not one of its Non-Equity Partners would be leaving without notice.  Based on this uncertainty, GFL decided to terminate Francis in January 2020.

28.     On or around January 7, 2021, in the midst of a global pandemic, Francis e-mailed Gerry Fox to "remind" GFL that she was supposedly "owed a minimum of $127,500."  Attached hereto as **Exhibit 6** is a true and correct copy of the January 2021 e-mail correspondence between Francis and Gerry Fox.

29.     Francis claimed that this amount represented her "guaranteed bonus for 2017 ($42,500, prorated given my July 10, 2017 commencement date) and guaranteed bonus for 2018 ($85,000)."  (Ex. 6 at p. 4.)  Again, the Offer Letter made clear that Francis did not have a guaranteed bonus and the Gerry Fox confirmed that to Francis on January 8, 2019.  (*See* Ex. 1; Ex. 4 at p. 1.)

30.     Francis demanded that GFL respond on or before January 22, 2021 "before litigation ensues."  (*Id.*)

31.     On or around January 26, 2021, Gerry Fox suggested the parties engage in a binding mediation to resolve the dispute and Francis declined.  As such GFL brings this instant suit for declaratory relief.

////

////

////

COMPLAINT FOR DECLARATORY RELIEF

## FIRST CAUSE OF ACTION
### (For Declaratory Relief)

32.     Plaintiff repeats and realleges each allegation contained above as though fully set forth herein.

33.     An actual controversy has arisen and now exists between GFL and Francis.  As described above, one on hand Francis contends that she is owed a minimum of $127,500 in supposedly guaranteed bonuses from GFL.  On the other hand, GFL contends that it fully complied with its obligations to compensate Francis during the term of her employment, that it does not owe Francis any more compensation, and that it never guaranteed Francis any bonus payments.

34.     GFL is entitled to a declaration that GFL has fully compensated Francis under the terms of her employment and that Francis has no right to additional compensation from GFL as claimed by her under the terms of her employment.

35.     GFL has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gerard Fox Law P.C. prays for judgment against Defendant Melissa Francis as follows:

1.     For a declaration that GFL has fully compensated Francis under the terms of her employment and that Francis has no right to additional compensation from GFL as claimed by her under the terms of her employment;

2.     For costs of suit incurred herein; and

3.     For such other and further relief as this Court deems just and proper.

Dated: February 1, 2021                   GERARD FOX LAW P.C.


By:    _Gerard P. Fox_____

        Gerard P. Fox, Esq.
        Attorneys for Plaintiff
        *Gerard Fox Law P.C.*

COMPLAINT FOR DECLARATORY RELIEF

EXHIBIT 1



August 22, 2016

*Via Electronic Mail*

Melissa Francis, Esq.
melissabfrancis@gmail.com

Re:   Confirmation of Non-Equity Partner Offer

Dear Melissa:

This letter is to document our formal offer to provide you a non-equity, partner position at this firm effective upon the commencement of your beginning work at Gerard Fox Law, P.C., ("the Firm") after your upcoming pregnancy/maternity leave with your current law firm, but provided you start work on or before Monday, July 10th 2017.  Should you not be able to start by that date, this Agreement will become null and void, and the parties would have to negotiate a new agreement or extension of the terms hereof.

Your annualized base salary for the part of 2017 at which you work at the firm, and through all of 2018, shall be set at a base salary no lower than $350,000. We will pay that through paychecks issued every two weeks.  In January of 2018, and each January thereafter you will receive a report on your financial performance and you will qualify for a bonus that is in line with industry custom and practice for growing bi-coastal firms.  We understand that your goal and need is to make $435,000 minimum each year and we will certainly work in good faith to put you in a position to earn that amount of money or more each year.  Your contributions to helping land lateral partners with business in New York, originating business, managing litigation cases and helping manage the New York office will all be considered carefully when setting your annual bonus.  We see no reason for you not to earn the $435,000 each year and will budget that amount for you, and it should be earned by you provided you make a very earnest effort at growing your own practice and the New York office and are committed to the venture.



The firm is quite committed to paying partners with a million in originated business (and over) slightly above the market set by most national firms, and our associates or service lawyers a bit below, with ownership always being generous to the venture and never selfish or all about the top dollar they can earn. The firm has reached a critical mass now where marketing this law firm is becoming easier and easier: in some ways now, it sells itself. Since we neither ask or allow lawyers to bill more than 2,200 hours and many come in over 2,000 but just by a bit, the only way to earn big dollars is to be a rainmaker and/or contribute to the addition of rainmaking lateral partners. Some extra amount of money can be made in running an office.

But, never lose sight of our very competitive hourly rate structure and how much that will aid you and your fellow partners in building their books of business and their income. Currently, our new partners top out at a base of about $240,000 and can move up to $275,000 base working on my or other partners work, but they can't move past that until they have profit making originations of their own. Partners with under a million in business, usually have draws of $280,00 or so max, and will try to earn through collections, higher billings and an efficient practice, a bit over $340,000 once they hit that million dollar mark in originations with a solid amount of billable hours on their own work. Some might push up over $380,000. Again, none are working over 2,200 hours. Their effective billing rate might be only $480.00 or a bit higher.

Once a partner shows an ability to collect over one million a year, we pay their bonus out in July and January and this is helpful for partners with over $2 million in business who still set their draw on the lower side to avoid over promising.

This deal will initially put you above the metrics of your fellow partners and this is because you will be asked to manage the New York office and report to me, meaning to check on dockets, morale and the overall energy of the office, and report to me and the management of the Firm. Also, and most importantly, we believe that you can be a rainmaker in New York and other markets and we are prepaying in a way for that to happen. Once you sit for your first partner meeting with our accountants you will learn to think along the lines of our metrics and not those of the big firms.



You can make the most money if you build a significant book of business and the larger the book, the more you will out-earn your colleagues at the bigger firms. We encourage and reward the entrepreneur. They are aided greatly by our rate flexibility which cannot be compromised by our overpaying for pure service partners or associates. This move only makes sense for you if you have some confidence in your ability over time to generate business, and to manage the morale of an office. We believe you are filled with the potential to be a top rainmaker in Manhattan and great force of energy in the New York office.

We have gone over the benefits provided to partners and you will be given those same benefits given to all non-equity partners. We will support reasonable business development expenses.

Persons with very substantial books of business who show an unselfish commitment to the longevity of this special law firm and its new principles, and who show a giving nature will be considered over time for equity partner.

We are taking the second half of the 26th Floor in New York, and I am signing an agreement next week to have that space by 2017. We will assign you a suitable partner office and if we have choices by the time you start, we'll let you pick; otherwise, we'll hold one for you. I suspect there will still be choices by the time you start. I'll try to keep you apprised of firm events.

Welcome aboard.

Sincerely,

Gerard P. Fox, Esq.

3

EXHIBIT 2

## EMPLOYEE ACKNOWLEDGEMENT FORM

I have read the Gerard Fox Law Employee Policy Manual ("Policy Manual"), and in particular understand Section II of the Policy Manual entitled "Office Confidentiality Policy," and Section III of the Policy Manual entitled "Policies Governing the Proper Use of Material Nonpublic Information."

I agree to comply in full with the Office Confidentiality Policy and the Policies Governing the Proper Use of Material Nonpublic Information as set forth in the Policy Manual. I further agree to consult with Gerard Fox with whom I am working before I disclose any client information to someone who may have legitimate "need to know" confidential information concerning a particular client of the firm. I understand that the Office Confidentiality Policy and the Policies Governing the Proper Use of Material Nonpublic Information cover those cases on which I am working and also any other cases discussed in my presence and/or for which I may otherwise have access to client information.

I understand that the strict observation of the guidelines set forth in Sections II and III of the Gerard Fox Law Employee Policy Manual is a condition of my employment at Gerard Fox Law ("GFL") and extends beyond the termination of my employment with GFL.

I further acknowledge my understanding of Part IA of the Policy Manual entitled "Statement of At-Will Employment Status." I understand that I entered my employment relationship with the firm voluntarily and acknowledge that there is no specific length of employment. Accordingly, either GFL or I can terminate the employment relationship at will, with or without cause, at any time.

Since the information, policies and benefits described here are necessarily subject to change, I acknowledge that revisions to the manual may occur, except to GFL's policy of employment-at-will. All such changes will be communicated through official notices or direct revisions to the policy manual. Any changes made may supersede, modify or eliminate existing policies.

Furthermore, I acknowledge that this Policy Manual is neither a contract of employment nor a legal document. I have received the Policy Manual, and I understand that it is my responsibility to read and comply with the policies contained in it and any revisions made to it.

Employee's Signature ⟨signature⟩      Date 07/10/17

Print Employee's Name ⟨handwritten⟩

EXHIBIT 3

**Other Non-Equity Partner Base Salaries:**

| | |
|---|---|
| Non-Equity Partner 1 | $260K |
| Non-Equity Partner 2 | $222K |
| Non-Equity Partner 3 | $215K |
| Non-Equity Partner 4 | $192K |
| Non-Equity Partner 5 | $215K |
| Non-Equity Partner 6 | $200K |
| Non-Equity Partner 7 | $242K |
| Non-Equity Partner 8 | $210K |
| Non-Equity Partner 9 | $215K |
| Non-Equity Partner 10 | $220K |
| Non-Equity Partner 11 | $250K |
| Non-Equity Partner 12 | $125K |
| Non-Equity Partner 13 | $250K |
| Non-Equity Partner 14 | $220K |

# EXHIBIT 4

**From:** Gerard Fox
**Sent:** Tuesday, January 8, 2019 9:43 AM
**To:** Melissa Francis <mfrancis@gerardfoxlaw.com>
**Subject:** RE: Good Morning

Melissa:

I don't think you are understanding the financial position of the Firm.  Circumstances have changed drastically and we will have to work very hard to meet payroll on time.  You are a service partner currently, and we have determined that we cannot pay our service partners more than $240,0000 per year.  That is what you will be paid for now.  We paid you more than that last year to honor the spirit of the  written agreement as you read it,  notwithstanding the dramatic changed circumstances.  It was an amazing hardship.  You were paid substantially more than colleagues who we value as much or more than you.  We have all suffered hardships and me the most, and all we can do is our best.  Of course, me and the other partners are talking next week about how we can raise all boats, and get the past due bills paid, the firm's reserves restored and then salaries up as merited and as money in hand allows.  If you are all in and can afford to try to turn the ship around within the salary structure we can afford, great, and if not, then we need to talk about how to move forward.  I'm way too busy turning things around to deal with any adverse claims made by people on the team that have to do with making more money than we have and can pay.   That would only further sink the firm.

Clearly, we all want to make more money, but there is plenty of work to do before any of us get there.  I am sorry the Firm's initial push did not go as planned, but we are forming a  new plan.  I will not continue on in email.  We can talk Friday, but really you need to accept, setting aside any positions you wish to take, that the Firm cannot afford to pay you more than $240,000, that we don't think even if we had the money that you should continue to be paid more than the top performers among the service partners, and that we will still have our hands full paying that amount of salary on time.  I will be focusing on the turnaround coming into the New Year.  I'll need to know simply whether you can afford to work within our firm's framework that is a function of our effective rates and collections, or not.  If not, we will, as always, be very professional, as you find a Firm that can pay you more than we can.  It's been hard losing some good lawyers but some have left because they have found places that can pay them more.  That's a reality we need to be able to accept until we improve the finances of the Firm.

Also, we disagree with your reading of the agreement or claim for a bonus.  But, again, I don't have any interest in arguing that agreement with you when the bottom line is that all we can afford to pay you is the salary paid to our other top performing service partners.  You just have to decide if that can work for you here, and if not, then we need to decide how to proceed that allows for a professional transition on all fronts.

Gerry.

**From:** Melissa Francis <mfrancis@gerardfoxlaw.com>
**Sent:** Monday, January 07, 2019 2:23 PM

**To:** Gerard Fox <gfox@gerardfoxlaw.com>
**Subject:** RE: Good Morning

Happy new year, Gerry.  As I hope you can appreciate, I have always been upfront with you about the fact that I support my family and need to make a certain amount of money in order to do that.  I can't pay my monthly expenses if my salary is reduced by $110,000 (an over 30% reduction).  A salary of $240,000 will impose a significant hardship on us and, given what I told you when interviewing that I needed to make, is not a salary that I would have left Mayer Brown for.

Under the terms of my contract, I am owed a bonus of approximately $40,750 for 2017 (which is the prorated amount) and an $85,000 bonus for 2018.  I have been extremely committed to this firm and therefore patient with respect to the 2017 bonus and am still willing to have it (as well as the bonus for 2018) paid over time, but I can't live on a salary of $240,000.

I am doing all that I can on my end to get the firm back on solid footing and to ensure that the New York office—which now has four junior associates—is being run at the highest level and has a great professional atmosphere.  I hope that we can figure out a way to work this out, because I am optimistic about our 2019 and have high hopes for this firm.

Best,


**Melissa B. Francis**
Partner
Gerard Fox Law, P.C.
1345 Sixth Avenue, 33rd Floor  |  New York, NY 10105
646-690-4978 (direct)  |  646-368-9328 (fax)
mfrancis@gerardfoxlaw.com  |  www.gerardfoxlaw.com

Los Angeles, CA  | New York, NY  |  Washington, DC



**From:** Gerard Fox <gfox@gerardfoxlaw.com>
**Sent:** Sunday, December 30, 2018 2:56 PM
**To:** Melissa Francis <mfrancis@gerardfoxlaw.com>
**Cc:** Samantha Fox <sfox@gerardfoxlaw.com>
**Subject:** Good Morning

Melissa:

As you know, it's been a tough year for the Firm on many levels.  The presence of slowly growing larger accounts and the talent left over after people not carrying their weight were let go or others simply left, is solid and impressive, and if I can find my A game this year, the Firm should be in better shape come year end.  I sat with Samantha and the finances and one thing is clear, we have to get back to matching expenses with actual revenues and I have had to make hard decisions, letting go of Liz in LA and giving Jake in DC the docketing, letting go of the young attorney Sylvia in DC, and not matching a salary raise request by Mary Catherine and ultimately letting her go, and many other changes.  Our top non-equity partners now make $240,000 base and one received a $5,000 bonus this year and the other $10,000, based on their efforts and what we could afford and where their base stood.  They are Sebastian and Scott.  Chaka and Marina make around $200,000 but work fewer hours and do not generally travel.  We can't afford your full salary any more.  We just can't.  Our entire system of rates and effective rates does not support any non-equity partner making over

$240,000.  Our payroll most this year was in total $500,000 a month, and the rents and other must pay bills like health insurance and unreimbursed client vendor costs ran, after vacating the expensive NY space, about $150,000 a month, and that does not include past due expenses.  We are collecting a little over $400,000 a month.  Some of the cuts which Samantha went over with me included subleasing the 11th floor in LA which is one third done, moving the DC office into Kelly, Dry space where we sublease just three offices (which is in the works), letting go of Liz and Sylvia, and bringing your base salary to $240,000.  That means all we can afford to pay you starting next year January 1st of the new year is a base of $240,000.

We did pay you the much higher salary all last year even though it was one of several factors throwing us out of whack.  I chose to tackle the bigger firm issues,  and cut even my own draw to make the high payment.  Ed opened the payroll envelopes once when he was not allowed and let the other partners know how much more you were making.  That certainly caused problems but I did not give in, paid you the full amount, even letting other partners leave, but now it's just a matter of raw dollars and cents.  I can't afford to pay you that higher salary.  I need to normalize expenses and match it with collections and pay off the remaining unpaid vendors.  I can't live through another year of spending more than we can afford at this Firm.

This is not a punishment or something to argue about.  In fact, with this necessary adjustment you are for the time being paid as much as Sebastian and Scott who work a ton of hours, more than anyone else in the Firm, who travel, who have banked huge wins and are very important to me and the Firm.  You may not know this, but in the summer, Scott and Jonathan both reduced their salaries substantially to help the Firm normalize, knowing we could not afford to pay more.  Scott remains and Jonathan left.  I have, however sought the remaining partners' counsel on how we can as a group increase revenue.  I will be setting a call with them to plan how we move our revenue needle back up.  When you came here, I was collecting $800,000 a month, on my cases, double what I'm collecting now.  Some of the case flow is random luck, but I have devoted a ton of time to a turn around in the direction of larger accounts.  I've been less open to the Kevin Burns of the world and spent less time with those referral sources.  I need to mix in both the larger corporate stuff and some one off clients to get back to where we need to be and target and land some bigger corporate accounts.  I have two clients waiting to launch a good mid-sized case.  One will likely for sure launch it in January, but the other might wait a few months.  That would push us up toward $500,000.

I have to land solid additional work and we all have to get rid of the non-paying work.  I feel confident that now we will start the new year better in balance and that I'll be able to focus on driving new business.

We are trying our best.  Happy New Year.

Gerry.

EXHIBIT 5

**From:**          Melissa Francis
**Sent:**          Thursday, October 17, 2019 5:23 PM
**To:**            Gerard Fox
**Subject:**       Salary Adjustment Request

Gerry:

As you know, I financially support my family and have been forced to dip into our modest savings for the last ten plus months in order to make the mortgage payments. Although I truly value my employment with this firm and my colleagues, my current salary of $260k is unfortunately far lower than I need it to be. My husband and I have crunched the numbers and I need to start making a minimum of $335k by November in order to remain here. Please do not consider this email to be threatening in any way, as it is being written solely in the interest of being fully transparent with you.

Aside from my professional skillsets and leadership attributes that you've witnessed over the past few years, there are some other more practical considerations that I ask you to bear in mind: the $335k figure mentioned above is far lower—$65k-95k lower—than the salary that I would receive at other *comparable* New York firms, given my level of seniority; the firm would have to incur a substantial headhunter fee to locate a suitable replacement; my replacement would not have institutional knowledge and would be an unknown in terms of work product, work ethic, managerial skills, attitude, ability to assimilate into firm culture, and loyalty; it would be significantly more difficult for you to grow the New York office—which, as you've observed, has been thriving over the past year—without someone with my pedigree and experience; and, you would need to spend substantially more time in New York than you currently spend until a suitable replacement has been hired, caught up-to-speed on my matters (including the Antech matter, which may well go to trial in January or shortly thereafter), and has instilled in you a sense of confidence that he/she can independently and smoothly run the New York office in your absence.

I will need to know by November 1 if the firm will be able to increase my salary to $335k by November 15, as I will need to start looking elsewhere if that's not feasible. I will also need the firm's commitment to maintaining this minimum salary for two years (through end of 2021) and to not decrease this minimum salary amount thereafter without providing at least sixty-days notice. As I hope you can appreciate, given my familial obligations, I simply cannot afford to risk having my salary decreased without sufficient notice.

I understand that the firm is not yet on perfectly solid footing and am by no means making this request lightly. I sincerely hope that you can accommodate it and that I can continue to make valuable contributions to your firm.

Thank you, in advance, for your consideration.

Best,


**Melissa B. Francis**
Partner
Gerard Fox Law, P.C.
1345 Sixth Avenue, 33rd Floor | New York, NY 10105
646-690-4978 (direct) | 646-368-9328 (fax)
mfrancis@gerardfoxlaw.com | www.gerardfoxlaw.com

Los Angeles, CA | New York, NY | Washington, DC



EXHIBIT 6

**From:** melissabfrancis@gmail.com <melissabfrancis@gmail.com>
**Sent:** Wednesday, January 27, 2021 5:25 PM
**To:** Gerard Fox <gfox@gerardfoxlaw.com>
**Subject:** [External Sender] RE: [External Sender] RE: [External Sender] Re: [External Sender] RE: Contractually owed compensation

Anne Clark of Vladeck, Raskin & Clark.  She can be reached at 212.403.7300.  You'll be hearing from her shortly.

Best,


Melissa B. Francis
melissabfrancis@gmail.com
301.785.9100

**From:** Gerard Fox <gfox@gerardfoxlaw.com>
**Sent:** Tuesday, January 26, 2021 10:42 PM
**To:** melissabfrancis@gmail.com
**Subject:** Re: [External Sender] RE: [External Sender] Re: [External Sender] RE: Contractually owed compensation

Give me the name and number of your lawyer. My lawyer will call Tuesday.  One of two partners will handle and I will make sure you have their name by Tuesday.

Sent from my iPhone


> On Jan 26, 2021, at 5:53 PM, Gerard Fox <gfox@gerardfoxlaw.com> wrote:
>
>  Your claim is frivolous. So sad you are trying to hustle more money out of us in a pandemic.  My lawyer is just getting the file and will look to speak with your representation shortly.
>
> Sent from my iPhone
>
>
>> On Jan 26, 2021, at 5:17 PM, melissabfrancis@gmail.com wrote:
>>
>>
>> Not interested.  As noted in my initial email, I remain contractually owed my bonuses for 2017 and 2018.  To the extent that you now try to contend otherwise, my counsel will be bringing claims not only for breach of contract, but also under NY Labor Law, which would require you to reimburse my legal fees.  My purpose for reaching out several

1

weeks ago was to therefore try to resolve our dispute before running up those
fees. That said, I am not interested in anything short of your agreement to pay me what
I remain contractually owed (potentially over a reasonable period of time).

Sincerely,


Melissa B. Francis
melissabfrancis@gmail.com
301.785.9100

**From:** Gerard Fox <gfox@gerardfoxlaw.com>
**Sent:** Tuesday, January 26, 2021 10:13 AM
**To:** Melissa Francis <melissabfrancis@gmail.com>
**Subject:** Re: [External Sender] Re: [External Sender] RE: Contractually owed
compensation

My counsel suggests a one day binding arbitration in the Fall when we can appear. Give
it some thought.

Sent from my iPhone

> On Jan 26, 2021, at 4:30 AM, Melissa Francis
> <melissabfrancis@gmail.com> wrote:
>
> You were going to provide me with your counsel's information
> yesterday, so that I can pass it along.
>
> Melissa B. Francis
> melissabfrancis@gmail.com
> 301.785.9100
>
> On Fri, Jan 22, 2021, 9:17 PM Gerard Fox <gfox@gerardfoxlaw.com>
> wrote:
>> Melissa:
>>
>> Will do Monday. Have a lovely weekend.
>>
>> Sent from my iPhone
>>
>>> On Jan 22, 2021, at 6:03 PM,
>>> melissabfrancis@gmail.com wrote:
>>>
>>>
>>> Dear Gerry:

2

As today was the deadline to respond to my January 7 email, please provide the name and contact information of your counsel, so that I can forward it on to mine.

Sincerely,

Melissa B. Francis
melissabfrancis@gmail.com
301.785.9100

**From:** Melissa Francis <melissabfrancis@gmail.com>
**Sent:** Thursday, January 7, 2021 5:29 PM
**To:** Gerard Fox <gfox@gerardfoxlaw.com>
**Cc:** Samantha Fox <sfox@gerardfoxlaw.com>
**Subject:** Contractually owed compensation

Dear Gerry:

The purpose of this letter is to remind you that I remain contractually owed a minimum of $127,500 plus accruing statutory interest by Gerard Fox Law (the "Firm") pursuant to the attached letter, dated August 22, 2016, and related documentation. This amount represents my guaranteed bonus for 2017 ($42,500, prorated given my July 10, 2017 commencement date) and guaranteed bonus for 2018 ($85,000). To the extent that you try to contend that these bonus amounts are no longer owed in full, despite your previous acknowledgements to the contrary, a named partner in one of the preeminent employment law firms in the country has been retained to pursue this and other claims against you and the Firm, and we will be seeking attorneys' fees and damages for additional claims.

Please respond via email on or before Friday, January 22, 2021 if you would like to resolve this matter before litigation ensues. This letter does not contain a complete expression of the facts and law supporting the aforementioned claims. All of my rights are reserved and none are waived. I look forward to your prompt response.

3

Sincerely,


--

Melissa B. Francis

melissabfrancis@gmail.com

301.785.9100